T.C. Summary Opinion 2008-105


UNITED STATES TAX COURT


HASAN HUSEYIN BABATURK, Petitioner $v$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9950-06S.          Filed August 19, 2008.


Hasan Huseyin Babaturk, pro se.

Bradley C. Plovan, for respondent.


GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $34,890 and $6,985, and accuracy-related penalties under section 6662(a) of $6,978 and $1,397, in petitioner's Federal income tax for 2003 and 2004, respectively.

The deficiencies resulted from:  (1) Respondent's disallowance of $106,710 and $14,850 of business expense deductions claimed on Schedule C, Profit or Loss From Business, for 2003 and 2004, respectively; (2) respondent's disallowance of dependency exemption deductions petitioner claimed for his girlfriend, Arlene Makris (Ms. Makris), in 2003 and 2004; and (3) $650 of unreported income for 2004.  In the deficiency computations, respondent also made adjustments to petitioner's self-employment income, itemized deductions, and alternative minimum taxes based on the aforementioned disallowances and income adjustment.

After concessions,[1] the issues for decision are:  (1) Whether petitioner is entitled to certain business expense deductions for 2003 and 2004; (2) whether petitioner is entitled

---

[1]The parties agree that petitioner received $650 in nonemployee compensation from Erdman Medical Center, Inc., in 2004 which was reported on the Schedule C for Erdman Medical Center, Inc.  However, petitioner's deduction of a $650 insurance expense resulted in zero business income.  Respondent allowed this expense.

to dependency exemption deductions for Ms. Makris for 2003 and 2004; and (3) whether petitioner is liable for accuracy-related penalties under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Maryland at the time the petition was filed.

During 2003 petitioner was a general practice physician who provided medical services for seven medical clinics in Baltimore, Maryland, and the surrounding area. These were: Erdman Medical Center, Inc.; Mount Claire Medical Center, Inc.; Alameda Medical Center, Inc.; Liberty Medical and Injury Center, Inc.; Slade Medical Center, Inc.; Northern Medical and Physical Therapy Center, LLC; and Goodcare Medical Services. Petitioner also provided medical services as a telemedicine physician for Medical Advisory Systems, Inc., in Owings, Maryland. Petitioner attached eight Schedules C (one for each clinic where he worked and one for his work at Medical Advisory Systems, Inc.) to his 2003 Federal income tax return on which he reported combined gross income of $162,757.46, received from the above sources, and combined business expenses totaling $106,710. The business expenses deducted were as follows:

| | |
|---|---|
| Car and truck expenses | $20,100 |
| Commissions and fees | 1,465 |
| Insurance | 19,910 |
| Legal and professional services | 10,010 |
| Office expenses | [1]6,015 |
| Repairs and maintenance | 5,540 |
| Supplies | 5,010 |
| Taxes and licenses | 1,050 |
| Travel | 19,620 |
| Meals and entertainment | 17,990 |
| Total | 106,710 |

[1]Petitioner classified his cellular phone expenses for both years as office expenses.

During 2004 petitioner worked at Medical Advisory Systems, Inc., Erdman Medical Center, Inc., and MS-HC, L.L.C., a multispecialty health clinic. The latter two facilities were in Baltimore. Petitioner submitted two Schedules C with his 2004 Federal income tax return: One for Medical Advisory Systems, Inc., and the other for Erdman Medical Center, Inc. On these Schedules C he reported combined gross income totaling $17,150 and combined business expenses totaling $15,550. These business expenses were as follows:

| | |
|---|---|
| Car and truck expenses | $5,000 |
| Insurance | 2,500 |
| Legal and professional services | 3,000 |
| Office expenses | 2,000 |
| Travel | 2,000 |
| Meals and entertainment | 1,000 |
| Total | [1]15,500 |

[1]In the notice of deficiency for 2004 respondent disallowed $14,850 of business expenses.

Petitioner worked at eight medical facilities in 2003. He divided his time between working at medical clinics in and around Baltimore and the telemedicine facility in Owings, Maryland, approximately 50 miles from Baltimore. Petitioner would often work at more than one of the Baltimore-area clinics per day. Petitioner kept regular office hours at each of these clinics, and support staff employed by the clinic would arrange his patient schedule. All supplies and equipment that petitioner used while at the facility were provided by the clinic with the exception of personal items limited to his lab coat and stethoscope.

Petitioner would occasionally work a full day seeing patients at one or more of the medical clinics and then travel to Owings to work at Medical Advisory Systems, Inc. Owings is approximately 1 hour from Baltimore by car. As a telemedicine physician, petitioner staffed an Internet phone with video capabilities in order to consult with and treat patients working overseas as U.S. Department of Defense contractors and oil workers. Petitioner would usually arrive at the call center in the early evening and work his assigned shift through the night. The facility provided all of the equipment necessary for petitioner's work at the call center including a break/sleep room for him to rest in during and after his shift. Petitioner

would often go to breakfast with the other call center physicians before returning to Baltimore.

On his 2003 and 2004 returns petitioner claimed two dependency exemptions deductions:  One for his minor child, B.B.,[2] and one for Ms. Makris.  At the time of trial petitioner's minor son was 16 years old, and he had been in a relationship with Ms. Makris, the child's mother, for 17 years. Ms. Makris and the child resided with petitioner, and Ms. Makris did not work outside of the home in either 2003 or 2004. Respondent disallowed petitioner's claimed dependency exemption deductions for Ms. Makris because the "relationship between (petitioner and Ms. Makris) was in violation of local law."

Following notification that his 2003 and 2004 returns had been selected for examination, petitioner met with a revenue agent.  On the basis of that meeting, petitioner was convinced that the revenue agent was biased against him because he is a Muslim.  Following the meeting, both the revenue agent and an Appeals officer attempted on several occasions to reschedule petitioner's examination and later an Appeals conference. However, either petitioner's schedule would conflict with the time that the revenue agent or the Appeals officer proposed or petitioner would change his mind about attending the scheduled

---

[2]The Court uses initials when referring to a minor child.

conference on the basis of "his perception of racial bias" stemming from his previous meeting with the revenue agent.

## Discussion

In general, the Commissioner's determination as set forth in a notice of deficiency is presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that the burden of proof shall be on the taxpayer. In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 shifts the burden of proof to the Commissioner. Sec. 7491(a)(1); Rule 142(a)(2). Respondent argues that petitioner has not produced sufficient evidence such that the burden of proof should shift to him. For the reasons discussed infra we agree.

Schedule C Expenses

Deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. With respect to the Schedule C expenses, petitioner bears the burden of proving that respondent's determinations as set forth in the notice of

deficiency are erroneous.  See Rule 142(a); <u>Welch v. Helvering</u>, <u>supra</u> at 115.

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact.  See <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).  In general, an expense is ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose.  See <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business.  See <u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966); <u>Carbine v. Commissioner</u>, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985).  Section 262(a) generally disallows a deduction for personal, living, or family expenses.

A taxpayer whose principal place of business is at a distance from his residence cannot deduct the cost of the transportation to and from the business or the costs of meals and lodging at the place of business.  Such expenses are regarded as personal commuting expenses and under section 262 are not deductible.  <u>Fausner v. Commissioner</u>, 413 U.S. 838 (1973); <u>Commissioner v. Flowers</u>, 326 U.S. 465 (1946).  If a

taxpayer has several regular places of work, however, commuting expenses from the taxpayer's home to his first work site and from his last work site to his home are not deductible, but transportation expenses between the work sites are deductible. Steinhort v. Commissioner, 335 F.2d 496 (5th Cir. 1964), affg. T.C. Memo. 1962-233; Feistman v. Commissioner, 63 T.C. 129 (1974). Travel away from home generally requires that the taxpayer remain either overnight or for a period requiring sleep or rest. United States v. Correll, 389 U.S. 299 (1967).

For certain kinds of expenses otherwise deductible under section 162(a), such as expenses related to travel, meals and entertainment, and "listed property", as defined in section 280F(d)(4), a taxpayer must satisfy substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions. See sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). As pertinent here, "listed property" is defined in section 280F(d)(4) to include passenger automobiles and other property used as a means of transportation unless excepted by section 280F(d)(4)(C) or (5)(B), and cellular phones. See sec. 280F(d)(4)(A)(i), (ii), (v). With respect to such "listed property", a taxpayer must prove: (1) The amount of each separate expenditure with respect to such property; (2) the amount of each business use based on the appropriate measure; and (3) the business purpose for an expenditure or use

with respect to such property.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

In order to satisfy his burden of proof, petitioner relies on the following:  (1) His testimony; (2) certain credit card statements pertaining to 2003; (3) two calendars, one for 2003 and the other for 2004, that contain abbreviated notes as to his work assignments; and (4) a document entitled "IRS Review of Taxpayer's papers received 10/4/07", which petitioner prepared following a meeting with the revenue agent.

At the outset, we note that petitioner's testimony as to his business's expenses for the years in issue was, at times, inconsistent, vague, conclusory, and self-serving.  As such, we are not required to, nor shall we, rely on his testimony to establish his entitlement to any deductions at issue.  See Shea v. Commissioner, 112 T.C. 183, 188 (1999).  We are convinced, however, from petitioner's testimony that his trips between the clinics in the Baltimore area would generally qualify as deductible transportation expenses.  Also, on the basis of petitioner's testimony, we do not believe that petitioner's overnight work at Medical Advisory Systems, Inc., required a period of sleep or rest as the nature of his job was to provide telemedicine services throughout the night.  Irrespective of the foregoing, and for the reasons discussed infra, we conclude that petitioner has not complied with the rules and regulations for

record keeping that, if satisfied, might entitle him to deduct certain business expenses at issue. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

First, and with respect to the credit card statements produced, petitioner testified that these statements listed items purchased both for his business and for personal use and that since his business and personal lives were "inextricably connected" it would be impossible to distinguish the two. In an attempt to do just this, petitioner placed a check mark on the statements beside those expenses which were either for his personal or business use. Without any testimony to clarify these marks it is impossible for us to presume their relevance; and even if we were to know whether petitioner used the check marks to indicate the expenses as business expenses, we lack credible evidence of explanation as to why they would be so. For example, several of the expenses listed are for purchases from department stores, convenience stores, and drug stores. Without detailed elaboration it is impossible to determine whether any of these expenses were business expenses of the type that petitioner would be entitled to claim a deduction for.

With respect to the calendars, we note that petitioner admitted that the notations on the calendars were not always contemporaneously made. Additionally, petitioner appears to have used an abbreviation system to record the number of hours

each day that he would work at a particular location. There is no record of the number of miles or the total weekly miles that he drove from location to location.[3] Moreover, petitioner did not testify as to how far each clinic was from the others. Given the coded nature of the calendars and the lack of any testimony as to the distances between petitioner's work sites, we do not find that the calendars are either credible or of any assistance to the Court.

Finally, and with respect to the document entitled "IRS Review of Taxpayer's papers received 10/4/07", petitioner prepared this document from his recollection following his meeting with the revenue agent. As respondent pointed out at trial, the nature of the expenses and the amounts for those expenses listed on this document were based on what petitioner felt that respondent would accept during the appeals process. In fact, as respondent also pointed out at trial, contrary to petitioner's opinion that the revenue agent was racially biased against him, that agent was willing to allow some of the claimed expenses despite petitioner's inability to produce all receipts and records pertaining to those items. Therefore, we view the document as no more than petitioner's opinion as to the items that he felt himself entitled to as business expense deductions

---

[3]If there is such a record, it is by no means evident from our examination of the calendar, and petitioner did not testify to such a notation at trial.

at the time of his meeting with the revenue agent or the Appeals officer.

On the basis of our review of the entire record, we cannot allow petitioner any of the claimed expenses for 2003 or 2004. Petitioner's glaring lack of substantiation is abundantly clear, along with his audacious position that it is the Court's function to sift through the unclear and incomplete records that he provided us in order to determine his correct tax liability. We find neither the calendars nor the credit card statements to be clear or credible evidence to substantiate any of his claimed expenses. With respect to the legal services deductions, the record is devoid of any invoices from his attorneys that might permit us to allow those items. In short, we have no evidence to approximate, where permissible, a base for any of the items claimed. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). Where section 274(d) requires strict substantiation for those items previously mentioned, we lack any evidence to determine any exact expenses or the business nature of those items.

Finally, as to petitioner's argument that were he to comply with the substantiation requirements of the Code he would be constantly recording his expenses, we are unmoved. Petitioner characterized almost two-thirds of his gross income for 2003 as business expense deductions and produced in substantiation only

two nearly illegible personal calendars and partial copies of two credit card statements for those years. His testimony at trial that he had "more receipts" and odometer readings was not supported by the production of any credible, tangible evidence of such items. Moreover, we simply do not believe that petitioner had such documentation. To wit, respondent's counsel, in preparation of this case for trial, sent petitioner no less than five requests for production in accordance with our decision in <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691, 692 (1974). None of these requests were answered. Accordingly, for all of the foregoing reasons, we sustain respondent in full with respect to his disallowance of petitioner's business expense deductions for 2003 and 2004.

Dependency Exemption Deductions

Petitioner claimed two dependency exemption deductions on his 2003 and 2004 returns. Petitioner listed one minor child and one adult--Ms. Makris--as dependents. Respondent disallowed the dependency exemption deductions claimed for Ms. Makris.

Generally, the burden of proof rests with the taxpayer. Rule 142(a)(1). This burden will shift, however, in "respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer". <u>Id.</u> A new argument presented to sustain a deficiency will be treated as a new matter when it "alters the original deficiency or requires the presentation of

different evidence." <u>Wayne Bolt & Nut Co. v. Commissioner</u>, 93 T.C. 500, 507 (1989). If the new argument merely clarifies or develops the Commissioner's original determination it is not a new matter that will shift the burden to the Commissioner. <u>Id.</u>

Respondent disallowed the claimed dependency exemption deductions for Ms. Makris on the basis that the relationship between petitioner and Ms. Makris was in violation of local law. See sec. 152(b)(5). At trial respondent abandoned this position and argued that we should sustain respondent's determination on the basis that petitioner had failed to show that he had provided more than one-half of the support for Ms. Makris during the years in issue. The evidence required to show that the relationship between petitioner and Ms. Makris violated local law is different from the evidence required to establish that petitioner had failed to show that he had provided more than one-half of the support for Ms. Makris during the years in issue. The latter argument is therefore a new matter. Accordingly, the burden of proving that petitioner did not establish that he furnished more than one-half of the total support for Ms. Makris during the years in issue is on respondent. See Rule 142(a).

Section 151 allows deductions for personal exemptions, including exemptions for dependents of a taxpayer. See sec. 151(c). Section 152(a) defines the term "dependent", as

relevant here, to include an individual who has as his or her principal place of abode for the taxable year the home of the taxpayer, if over half of his or her support for the calendar year was received from the taxpayer. The term "support" includes "food, shelter, clothing, medical and dental care, education, and the like." Sec. 1.152-1(a)(2)(i), Income Tax Regs.

In determining whether an individual received more than half of his or her support from a taxpayer, there shall be taken into account the amount of total support received from the taxpayer as compared to the entire amount of support which the individual received from all sources. Id.

Petitioner testified that Ms. Makris lived with him throughout 2003 and 2004, that she did not work outside of the home, that he provided her with credit cards for her personal use, and that he asked her to purchase items for himself and their home. Petitioner stated that Ms. Makris received only occasional support from her elderly mother.

Respondent presented no evidence as to the total amount of support provided to Ms. Makris from all sources and that Dr. Babaturk furnished less than 50 percent of her support. Accordingly, we conclude that respondent has failed to meet his burden of proof on this issue and hold that Dr. Babaturk is

entitled to claim dependency exemption deductions with respect
to Ms. Makris for 2003 and 2004.

Accuracy-Related Penalties

In the notice of deficiency, respondent determined that
petitioner is liable for accuracy-related penalties under
section 6662(a) for underpayments of taxes.  With respect to any
penalty or addition to tax, section 7491(c) places the burden of
production on the Commissioner.

Section 6662(a) imposes a 20-percent penalty with respect
"to any portion of an underpayment of tax required to be shown
on a return".  This penalty applies to underpayments
attributable to any substantial understatement of income tax.
Sec. 6662(a), (b)(2).

An "understatement" of income tax is defined as the excess
of the tax required to be shown on the return over the tax
actually shown on the return.  Sec. 6662(d)(2)(A).  An
understatement is "substantial" if it exceeds the greater of 10
percent of the tax required to be shown on the return, or
$5,000.  Sec. 6662(d)(1)(A).

Section 6664 provides a defense to the accuracy-related
penalty if a taxpayer establishes that there was reasonable
cause for any portion of the underpayment and that he or she
acted in good faith with respect to that portion.  Sec.
6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  Whether a

taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer's education, experience, and knowledge are considered in determining reasonable cause and good faith. And, generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.

Respondent determined an accuracy-related penalty under section 6662(a) to be applicable because petitioner understated his income tax by $34,890 on his 2003 return and $6,985 on his 2004 return. Because each understatement of tax was greater than 10 percent of the tax required to be shown on the return or $5,000, each understatement was a substantial understatement of income tax pursuant to section 6662(d)(1)(A).

Petitioner argues that he should not be held liable for the penalty because he was in compliance with the applicable rules and regulations. For the reasons previously discussed, we disagree.

The Commissioner bears the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116

T.C. 438, 446 (2001).  Although the Commissioner bears the burden of production with respect to the penalty, the Commissioner "need not introduce evidence regarding reasonable cause * * * or similar provisions.  * * * [T]he taxpayer bears the burden of proof with regard to those issues."  Id.

Petitioner concedes that if we determine that he did not comply with the rules and regulations with respect to record keeping for the years in issue, underpayments of taxes would exist for those years.  Petitioner offered no evidence under section 6662 with respect to those items raised in the petition. On the basis of the foregoing, we hold that respondent has satisfied the burden of production under section 7491(c).

We further conclude that petitioner has failed to show that his reliance on the documents produced to substantiate the claimed expenses was reasonable.  On the entire record before us, we hold that petitioner has failed to carry his burden of proving that he is not liable for  accuracy-related penalties for 2003 and 2004 under section 6662(a).  We accordingly sustain respondent's determination with respect to that issue.

Decision will be entered

under Rule 155.